OPINION
In the late afternoon of February 2, 1999, Officer Hughes, Sergeant Brommel, and Officer Stringer were all patrolling on bicycle in the area of Howell Avenue and Mathison Street in the City of Dayton. This particular area is the subject of many drug complaints from citizens. Officer Hughes separated from the other two officers, arriving at the intersection of Third Street and Mathison. At the same time, the other two officers were circling around to head north on Mathison toward Third Street. Mathison is a one-way street going north.
Officer Hughes was looking south on Mathison when he noticed two individuals standing at a pay phone at the corner of Howell and Mathison, one block from where Officer Hughes was standing. He also noticed a group of people in a vacant lot across the street from the pay phone. Shortly thereafter, Officer Hughes heard one of the people from the group yell, "Police, the police are coming." Immediately, the two people by the pay phone ran across the street and jumped into a gray Oldsmobile. Officer Hughes watched as the gray Oldsmobile swiftly pulled away from the curb without using a turn signal. At approximately the same time, Sergeant Brommel and Officer Stringer rounded the corner on Mathison and also saw the Oldsmobile pull away from the curb without signaling.
Officer Hughes began pedaling his bicycle south in the middle of Mathison toward the Oldsmobile. He placed his hand up ordering the vehicle to stop, which it did. Subsequently, Officer Hughes approached the driver's side of the vehicle while the other two officers approached the passenger side. In response, Eric D. Brewer, the driver of the vehicle, rolled down his window and asked Officer Hughes what the problem was. Officer Hughes advised him that he had witnessed a traffic violation and was going to give him a ticket. Next, Officer Hughes asked for Brewer's driver's license. Brewer responded that he did not have a driver's license.
At this point, Officer Hughes advised Brewer he was going to be arrested for driving without a license and asked him to step out of the vehicle. Upon Brewer exiting the vehicle, Officer Hughes again informed him that he was being arrested for driving without a license and then handcuffed him. Officer Hughes also cited Brewer for failure to signal and a seatbelt violation.
After he was handcuffed, Officer Hughes conducted a search of Brewer. During this search, the officer found a large, bulky item between Brewer's belt line and his groin area. Based on his experience, Officer Hughes was "pretty sure" that it was crack cocaine. Officer Hughes retrieved the item, and it in fact was crack cocaine. Thereafter, he called a cruiser to the scene to transport Brewer to the police station.
Once secured in the back of the police cruiser, Officer Hughes advised Brewer of his Miranda rights. Brewer stated that he understood each section. Subsequently, Officer Hughes asked Brewer if the crack cocaine was for his personal use or if he was selling it. Brewer answered that it was for his own personal use only.
Eric D. Brewer was indicted for possessing crack cocaine in an amount greater than one gram but less than five grams. He filed a motion to suppress all evidence and statements resulting from his arrest. Brewer argued in his suppression motion that the police officers did not have articulable suspicion to stop him for a violation of R.C.G.O. 71.31 because that ordinance had no application to the operation of a vehicle pulling away from a curb. (Tr. 42).
In granting the defendant's suppression motion, the trial court issued an exhaustive decision and held that R.C.G.O. 71.31 does not apply to a motorist who fails to utilize a turn signal when pulling a parked car from a curb on a residential street. The State raises the following assignment of error:
 THE TRIAL COURT COMMITTED ERROR WHEN IT SUPPRESSED CRACK COCAINE AS FRUIT OF THE POISONOUS TREE, SINCE THE INITIAL STOP OF APPELLEE WAS BASED ON PROBABLE CAUSE THAT APPELLEE WAS COMMITTING A TRAFFIC VIOLATION, AND THE SUBSEQUENT ARREST AND SEARCH OF APPELLEE WAS LIKEWISE VALID.
In its brief to this court, the State raises for the first time the argument that the defendant violated a different section of the Dayton City ordinances, to wit R.C.G.O. 72.05, which provides:
 Any vehicle attempting to reenter traffic while halted parallel or diagonal with the curb shall yield the right-of-way to oncoming traffic in the street approaching from the rear. The parked vehicle shall proceed into the line of traffic only after the driver has given the appropriate signal which indicates his intention of turning from the curb and into the line of traffic. The vehicle shall in no event enter the line of traffic until the driver has ascertained that no hazard exists.
It is problematical whether R.C. 72.05 has any application to defendant's conduct as there is no evidence there was any oncoming traffic approaching from the rear of the defendant's vehicle when he drove away from the curb. In any event, this court is not required to consider a legal argument which was not made in the first instance in the trial court. The general rule is that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus. In short, the trial court was not required to search the Dayton City Ordinances to find an ordinance which would justify the police officer's conduct in stopping the defendant's vehicle. Accordingly, the assignment of error is overruled.
The judgment of the trial court is Affirmed.
GRADY, P.J. and WOLFF, J., concur.
Copies mailed to:
Kirsten A. Davies, Arvin S. Miller, Hon. Dennis Langer.